Russ Allen Bloodsworth filed an action against Sylvester Morgan and Morgan Bail Bonding, Inc., alleging fraud, false arrest, false imprisonment, outrage, and breach of contract. The trial court entered a summary judgment for Morgan on all of Bloodsworth's claims and for Morgan Bail Bonding on all of Bloodsworth's claims except the breach of contract claim, and it made that judgment final pursuant to Rule 54(b), A.R.Civ.P.
On September 14, 1988, Bloodsworth was arrested and placed in the county jail in Tuscaloosa. Bloodsworth entered into a contract with Morgan Bail Bonding pursuant to which Morgan Bail Bonding agreed to post an appearance bond for Bloodsworth. Bloodsworth paid Morgan Bail Bonding $105 for a $1,000 bond. Bloodsworth was released from jail on this bond.
On November 25, 1988, Bloodsworth was again arrested, and he again contacted Morgan Bail Bonding to obtain bond. Bond for this offense was set at $5,000, for payment of which Bloodsworth agreed to pay Morgan Bail Bonding $500. Bloodsworth did not have $500 then, so he paid $300 with the understanding that the balance was due in December. Again, Bloodsworth was released on the bond provided by Morgan Bail Bonding.
On November 29, 1988, Sylvester Morgan received word from one of the indemnitors on the $5,000 bond that Bloodsworth planned to leave the state as soon as he could get some money. On December 2, 1988, Morgan obtained a certified copy of the $5,000 bond. That same day, he and Jeff Wilder, a Morgan Bail Bonding employee, went to Bloodsworth's residence and, perhaps by telling Bloodsworth that they were taking him to the bank to get the $200 that Bloodsworth still owed Morgan Bail Bonding, they took Bloodsworth into custody. They returned Bloodsworth to the county jail in Tuscaloosa and turned him over to the sheriffs department. Neither Morgan nor Wilder touched Bloodsworth or threatened him in any way.
In Stephens v. City of Montgomery, 575 So.2d 1095, 1097 (Ala. 1991), we stated the following regarding summary judgment proceedings:
 "The standard used to determine the propriety of a summary judgment is found in Rule 56(c), A.R.Civ.P.:
 " 'The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'
 "The burdens placed on the parties by this rule have often been described:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala. 1980).'
 "Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala. 1985).
 "In determining whether there is substantial evidence to defeat a summary judgment motion, this Court reviews the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Sanders *Page 57 v. Kirkland Co., 510 So.2d 138 (Ala. 1987)."
In order to rebut the prima facie showing made by the defendant, the plaintiffs must show the existence of a genuine issue of material fact by "substantial evidence," Ala. Code 1975, § 12-21-12, which has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989). The trial court's ruling on a summary judgment motion is a nondiscretionary ruling, and no presumption of correctness attaches to that ruling; accordingly, our review of the evidence properly presented in the record is de novo. Hightower Co. v. UnitedStates Fidelity Guaranty Co., 527 So.2d 698 (Ala. 1988).
Bloodsworth contends that the trial court erred in entering a summary judgment on all his claims against Morgan individually. We disagree. Bloodsworth did not prove that Morgan so conducted and controlled the business of Morgan Bail Bonding as to make it his instrumentality (and thus his alter ego) so that Morgan individually should be responsible for claims against the corporation. See, e.g., Killingsworth v.Crittenden, 585 So.2d 903 (Ala. 1991). Bloodsworth did not otherwise produce substantial evidence that his claims against Morgan individually should have gone to the jury.
Bloodsworth contends that the trial court erred by entering a summary judgment on his fraud claim against Morgan Bail Bonding. As the basis for his fraud claim, Bloodsworth argues that under Ala. Code 1975, § 15-13-22, Morgan Bail Bonding was not "authorized" to provide bail bonds and that Morgan Bail Bonding fraudulently represented to him that it was so authorized. Regardless of whether Morgan Bail Bonding was properly authorized pursuant to that statute to provide Bloodsworth a bail bond, Bloodsworth has shown no causal connection between the alleged wrong — Morgan Bail Bonding's not being "authorized" to provide bail bonds — and any damages he suffered, such as being returned to jail. Bloodsworth was returned to jail because Morgan Bail Bonding had reason to believe that he would attempt to leave the state; he was not returned to jail because Morgan Bail Bonding's alleged failure to comply with § 15-13-22 made the bond deficient. Because Bloodsworth did not prove a causal connection between the allegedly fraudulent representation and any damages he may have suffered, his action for fraud against Morgan Bail Bonding fails.
Furthermore, because Bloodsworth characterizes his fraud claim as a claim for promissory fraud, he must prove not only the normal elements of fraud, see Guinn v. American IntegrityInsurance Co., 568 So.2d 760 (Ala. 1990); Beautilite Co. v.Anthony, 554 So.2d 946 (Ala. 1989), but also the additional element that Morgan Bail Bonding intended to deceive him at the time it made the alleged fraudulent representation. Baker v.State Farm General Insurance Co., 585 So.2d 804 (Ala. 1991); E S Facilities v. Precision Chipper Corp., 565 So.2d 54 (Ala. 1990); Crowder v. Memory Hill Gardens, Inc., 516 So.2d 602
(Ala. 1987). Bloodsworth did not produce substantial evidence of such an intention.
Bloodsworth argues that the trial court erred in entering a summary judgment on his false imprisonment and false arrest claims against Morgan Bail Bonding. Morgan Bail Bonding argues that Ala. Code 1975, § 15-13-62, provides express authority for the actions it took in returning Bloodsworth to jail. Section15-13-62 provides:
 "[The sureties] may, at any time before a conditional judgment is entered against them, exonerate themselves by surrendering the defendant; and for that purpose, they may arrest the defendant on a certified copy of the undertaking at any place in the state, or may authorize another person to arrest him by an endorsement in writing on such copy."
Bloodsworth does not contend that the provision does not provide Morgan Bail Bonding the authority for its actions; instead, *Page 58 
Bloodsworth argues that because Morgan Bail Bonding was allegedly not authorized under § 15-13-22 to transact a bail bonding business, Morgan Bail Bonding cannot avail itself of §15-13-62 as a defense to the false imprisonment and false arrest claims. Bloodsworth's own argument defeats his theory of recovery for false imprisonment and false arrest, however, because if the bond was invalid, then he should never have been released from jail in the first instance.
Furthermore, under Bloodsworth's argument, the provisions of § 15-13-22 concerning qualifying for posting bond effectively force a bail bondsman to choose between allowing an arrested person to flee prosecution or accepting liability for false arrest and imprisonment. Consider the following situation: A person is arrested and then contacts a bail bondsman or bail-providing corporation. The person who was arrested pays the bail bondsman or corporation to obtain the bond, which the bondsman or corporation does, and the person who was arrested is released from jail. The person who was arrested later discovers correctly that the bondsman or corporation was not qualified under § 15-13-22 to obtain the bond. The person who was arrested decides to leave the state in hopes of avoiding prosecution, and the bail bondsman or corporation discovers the person's plan to flee. When the bondsman or the corporation acting through its employees attempts to take the person who was arrested to jail before that person leaves the state, the person who was arrested refuses to go, citing § 15-13-22. The bail bondsman or corporation, according to Bloodsworth's arguments, would then have two choices: either allow that person to leave or stop the person and consequently face liability for false imprisonment and false arrest. Nothing indicates that the legislature in enacting § 15-13-22 intended to create such a situation, and we perceive no legal basis for such a holding.
Additionally, Bloodsworth did not produce substantial evidence of the existence of a genuine issue of material fact regarding his claims against Morgan Bail Bonding for false imprisonment and false arrest. He bases his argument for those claims on his assertion that Morgan Bail Bonding did not obtain a $25,000 corporate surety bond pursuant to § 15-13-22(c); therefore, he asserts, it was not authorized to post bond. Notwithstanding Bloodsworth's argument, that provision applies to persons posting bonds and expressly excludes corporations
from its coverage. Bloodsworth also claims that Morgan Bail Bonding was not qualified under § 15-13-22(b), which does address corporations. Bloodsworth admitted in his motion opposing summary judgment that he had no documentary evidence to support that argument (although he hoped to obtain some later). At summary judgment stage, his only evidence supporting that argument was a general assertion in an affidavit by a bail bondsman in Tuscaloosa that in that bail bondsman's opinion Morgan Bail Bonding was not so qualified; that bondsman gave no basis for his opinion.
Finally, Bloodsworth contends that he produced sufficient evidence of the existence of a genuine issue of material fact regarding his outrage claim for that claim to go to the jury. In American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980), the Court recognized the tort of outrage and stated:
 "[W]e now recognize that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement, supra, at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement, supra at 72. See also Prosser, Law of Torts (4th ed.) at 56-60 and *Page 59 Wade, supra, for instances which clearly fall within the principle."
394 So.2d at 365. Bloodsworth did not present substantial evidence of the existence of a genuine issue of material fact as to the "extreme" conduct, 394 So.2d at 365, required to prove an outrage claim.
The trial court did not err, and its judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES and HOUSTON, JJ., concur.
MADDOX, J., concurs in the result.