631 So.2d 938 (1994)
William H. GILLILAND and Elsie B. Gilliland
v.
USCO POWER EQUIPMENT CORPORATION and Ted Lankford.
1920635.
Supreme Court of Alabama.
January 14, 1994.
Andrew P. Campbell, Eddie Leitman, S. Lynne Stephens and K. Phillip Luke of Leitman, Siegal, Payne & Campbell, P.C., Birmingham, for appellants.
*939 Frank M. Bainbridge of Bainbridge, Mims & Rogers, Birmingham, for appellees.
PER CURIAM.
The plaintiffs appeal from a dismissal of their complaint pursuant to Rule 12(b)(6), Ala.R.Civ.P. "Motions to dismiss should be granted sparingly, and a dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief." Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986); Fraternal Order of Police, Strawberry Lodge # 40 v. Entrekin, 294 Ala. 201, 314 So.2d 663 (1975).
After a careful review of the record, the briefs, the oral arguments, and the law, we conclude that the complaint states a claim on which relief can be granted. See, e.g., Ex parte Brown, 562 So.2d 485 (Ala.1990).
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, KENNEDY, INGRAM and COOK, JJ., concur.
HOUSTON, J., concurs in the result.
HOUSTON, Justice (concurring in the result).
After studying the complaint in this case and the majority opinion in Ex parte Brown, 562 So.2d 485 (Ala.1990), I am persuaded that, under our standard for reviewing Rule 12(b)(6), A.R.Civ.P., dismissals, we must reverse and remand; however, I wish that we would clarify the nature of the cause of action for oppression or squeeze-out of minority stockholders and the rules regarding standing to bring such an action.
I do not know how broad our cause of action for oppression or squeeze-out of minority stockholders is (Ex parte Brown, supra (Houston, J., dissenting)) or whether it sounds in tort or in contract (Fulton v. Callahan, 621 So.2d 1235, 1254-55 (Ala.1993) (Houston, J., concurring specially)); however, in Ex parte Brown, 562 So.2d at 492, the majority of this Court wrote the following:

"O'Neal's Oppression of Minority Shareholders, § 3.02, describes squeeze out techniques as follows:
"`§ 3.02. Squeeze techniques in general... [H]olders of a majority of the voting shares in a corporation, through their ability to elect and control a majority of the directors and to determine the outcome of shareholders' votes on other matters, have tremendous power to use a great variety of devices or modes of operation to benefit themselves at the expense of minority shareholders.
"`Here are a few illustrations. The squeezers may refuse to declare dividends [the basis for an individual "squeeze-out" claim]; they may drain off the corporation's earnings by exorbitant salaries and bonuses to the majority shareholder-officers and perhaps to their relatives, by high rental agreements for property the corporation leases from majority shareholders, or by unreasonable payments under contracts between the corporation and majority shareholders [the basis for a derivative claim]; they may deprive minority shareholders of corporate offices and of employment by the company [the basis for an individual claim]; they may cause the corporation to sell its assets at an inadequate price to the majority shareholders or to companies in which the majority are interested [the basis for a derivative claim]; they may organize a new company in which the minority will have no interest, transfer the corporation's assets or business to it, and perhaps then dissolve the old corporation [a derivative claim only]; or they may bring about the merger or consolidation of the corporation under a plan unfair to the minority. [See preceding comment.] As indicated, the techniques listed here merely illustrate the techniques which resourceful squeezers may utilize.'
"F.H. O'Neal and R. Thompson, O'Neal's Oppression of Minority Shareholders, § 3.02 (2d ed. 1985)."
If the squeeze techniques illustrated by O'Neal and Thompson provide a cause of action in Alabama, then the Gillilands have standing and have stated a cause of action. However, as noted in the bracketed comments I have provided in the quote from *940 O'Neal, it appears to me that some of O'Neal's illustrations encompass injury to the corporation as a whole and should be the basis for a derivative action only.
I think this Court should return to the bedrock of Galbreath v. Scott, 433 So.2d 454 (Ala.1983), and leave the shifting sands of the quote from O'Neal's Oppression of Minority Shareholders. Andrew Campbell stated the difference between derivative and individual shareholder claims better than I ever could, in "Litigating Minority Shareholder Rights and the New Tort[?] of Oppression," 53 Ala. Law. 108, 114 (1992):
"As explained in Galbreath the primary difference between derivative and individual claims is one of standing, and standing is determined by the directness of the injury. If the wrong directly damages the corporation and its assets from waste, conversion and intentional mismanagement, the claim is the corporation's. Hardy v. Hardy, 507 So.2d 409 (Ala.1987); Shelton v. Thompson, 544 So.2d 845 (Ala.1989). A consequential decrease in the value of the shareholder's shares does not vest in him an individual claim. Green v. Bradley Construction, Inc., 431 So.2d 1226 (Ala.1983); Stevens v. Lowder, 643 F.2d 1078 (5th Cir. 1981). But if the wrong is committed directly against the shareholder and his interests, such as oppression or fraud, so that his injury is unique, he will have standing to assert individual claims. McDonald v. U.S. Die Casting & Dev. Co., 451 [541] So.2d 1064 (Ala.1989)."
It appears to me that this would be an appropriate case in which to decide what minimum wrong must allegedly have been done to an individual minority shareholder to allow the shareholder standing to sue individually for oppression or squeeze-out, but that must wait for another day and another case.