Creola Land Development, Inc. ("Creola"), appeals from a judgment dismissing its complaint against Bentbrooke Housing, L.L.C., and Bentbrooke, L.L.C. (hereinafter collectively referred to as "Bentbrooke"). We reverse and remand.
On January 26, 2001, Creola filed a complaint against Bentbrooke, alleging in pertinent part:
 "4. On or about August 22, 2000, [Bentbrooke] procured a purported `Second Real Estate Mortgage and Fixture Filing' (hereinafter `second mortgage') from Greg Stewart . . . on . . . real estate located in Mobile County, Alabama. . . .
 "5. Stewart is purportedly the debtor on the `second mortgage.' The preamble to the `second mortgage' states that Stewart is `President and sole shareholder of Mortgagor.'
 "6. Stewart claimed to sign the `second mortgage' as `President' of Creola. . . .
 "7. On August 22, 2000, Stewart did not own 100% of the outstanding stock issued by Creola. Jonathan Shewmake (`Shewmake') owned 50% of the outstanding stock issued by Creola. Further, Stewart had assigned all of his `right, title and interest' in Creola on December 14, 1999.
 "8. The corporate By-Laws of Creola, adopted by the Creola Board of Directors on March 29, 1999, prohibit the contracting of indebtedness on behalf of the corporation unless approved by a resolution of the board of directors.
 "9. By resolution on April 5, 1999, the Creola Board of Directors authorized Stewart and Shewmake to jointly, but not separately and severally, incur indebtedness on behalf of Creola.
 "10. On August 22, 2000, Creola's Board of Directors consisted of Stewart and Shewmake. The Board of Directors did not approve the execution of the `second mortgage' or thereafter ratify *Page 287 
the `second mortgage.' Indeed, Shewmake did not consent to and was not even aware of the `second mortgage' to Bentbrooke. Accordingly, Stewart had no actual or apparent authority to execute the `second mortgage' on behalf of Creola.
 "11. The `second mortgage' presumably involved a prior business relationship between Greg Stewart, Greg Stewart Homes, Inc., [and Bentbrooke]. Creola received no consideration for the `second mortgage.'
 "12. Bentbrooke has previously sought to foreclose on the `second mortgage' by selling Creola's property to recover the TWO HUNDRED THOUSAND AND NO/100 DOLLARS guaranteed profit from Stewart which the `second mortgage' sought to secure.
 "13. The property allegedly secured by the `second mortgage' constitutes all or substantially all of the assets of Creola.
"Count One
"Declaratory Relief
 "14. Plaintiff hereby adopts and incorporates paragraphs 1 through 13 above as if fully set forth herein.
 "15. Plaintiff brings this cause for declaratory relief pursuant to [the Declaratory Judgment Act, Ala. Code 1975, § 6-6-220 et seq.] and Rule 57 of the Alabama Rules of Civil Procedure.
 "16. A justiciable case and controversy exists regarding the rights, status and other legal relations between the Plaintiff and [Bentbrooke] with respect to the validity and enforceability of the `second mortgage' described above.
 "17. The Alabama Code dictates that a corporation may only mortgage its property `on the terms and conditions and for the consideration determined by the Board of Directors.' [Ala. Code 1975,] 10-2B-12.01.
 "18. The Board of Directors did not approve the `second mortgage' or the consideration thereunder, or lack thereof.
 "19. At the time he signed the `second mortgage,' Stewart had no authority, actual, apparent or otherwise, to give the `second mortgage' to Bentbrooke. Therefore, the mortgage is unenforceable.
 "20. Creola received no consideration from Bentbrooke for the `second mortgage.' Therefore, the `second mortgage' is null and void for absence of consideration.
". . . .
 "23. The subject property constitutes all or substantially all of Creola's assets. Bentbrooke has indicated its intention to foreclose on said property. Further, [Bentbrooke's] `second mortgage' clouds Plaintiff's title to said property."
(Emphasis in original.) Creola sought a judgment declaring the mortgage void. It also sought an order enjoining Bentbrooke from foreclosing on the encumbered property and requiring Bentbrooke to cancel the mortgage.
Bentbrooke moved, pursuant to Ala.R.Civ.P. 12(b)(6), to dismiss the complaint for "failure to state a claim upon which relief can be granted." Specifically, the motion alleged: "In the present case, there is no justiciable controversy before the court as none of the rights of any of the parties to the second mortgage have been affected." The trial court granted the motion to dismiss; Creola appealed.
On appeal, Creola contends that the trial court erred in dismissing its complaint based on a lack of a justiciable *Page 288 
controversy. Bentbrooke argues that the complaint fails to state a justiciable controversy, because, it insists, "Creola has not [pleaded] any facts to the court which demonstrate that its right to lawful possession of the mortgaged property has in any way been affected." Brief of Appellee, at 6.
Bentbrooke's argument overlooks paragraphs 4, 12, and 23 of the complaint, and the standard of review to be applied to a Rule 12(b)(6) dismissal. In considering whether a complaint is sufficient to withstand a motion to dismiss, this Court must accept the allegations of the complaint as true. Ex parte Floyd, 796 So.2d 303, 305 (Ala. 2001);Callens v. Jefferson County Nursing Home, 769 So.2d 273, 277 n. 3 (Ala. 2000); Chitwood v. Carlsen, 346 So.2d 1149, 1151 (Ala. 1977); Pruitt v.Pruitt, 343 So.2d 495, 497-98 (Ala. 1977). Thus, the sole issue presented for review is whether the allegations of the complaint, taken as true, state a justiciable controversy. We hold that they do.
"All that is required for a declaratory judgment action is a bona fide
justiciable controversy." Gulf South Conference v. Boyd, 369 So.2d 553,557 (Ala. 1979). A controversy is justiciable where present "legal rights are thwarted or affected [so as] to warrant proceedings under the Declaratory Judgment statutes." Town of Warrior v. Blaylock, 275 Ala. 113,114, 152 So.2d 661, 662 (1963). Thus, "[d]eclaratory judgment proceedings will not lie for an `anticipated controversy.'" City of Dothan v.Eighty-Four West, Inc., 738 So.2d 903, 908 (Ala.Civ.App. 1999). "However, the parties should not be compelled to wait until the events giving rise to liability have occurred before having a determination of their rights and obligations." Id. (emphasis added); see Morton v.Allstate Ins. Co., 486 So.2d 1263, 1269 (Ala. 1986).
The complaint alleges that a cloud on the title to property owned by Creola currently exists as the result of an invalid mortgage encumbrance. The complaint further alleges that Bentbrooke, the mortgagee, has "sought to foreclose on the `second mortgage' by selling Creola's property." Accepting these allegations as true, we conclude that substantial rights of the parties are currently affected and that the complaint invokes jurisdiction under the Declaratory Judgment Act.
For these reasons, the trial court erred in dismissing Creola's complaint. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
Moore, C.J., and Houston, See, Lyons, Brown, Johnstone, Harwood, and Stuart, JJ., concur.