THOMPSON, Presiding Judge.
 

 Richard M. Crum, R.M. Crum Construction Company, Inc., R.M. Crum Construction Company of Alabama, Inc., and the Crum Family Limited Partnership (collectively, “the Crum plaintiffs”) appeal from a judgment of the Madison Circuit Court dismissing several of their claims against Johns Manville, Inc. (“Johns Manville”), and Tip-Top Roofing and Sheet Metal, Inc. (“Tip-Top”). For the reasons set forth herein, we affirm the judgment in part and reverse it in part.
 

 On October 12, 2007, the Crum plaintiffs filed an action against Johns Manville, Tip-Top, and several fictitiously named parties in which the Crum plaintiffs alleged that they had purchased a roofing system from Johns Manville for a building they were constructing. The Crum plaintiffs alleged that Johns Manville had guaranteed the roofing system for a period of 10 years and that, during that period, numerous problems with the roofing system had occurred, including leaks, which they had reported to Johns Manville. According to the complaint, Tip-Top, as Johns Manville’s representative and under Johns Manville’s direction, had “allegedly repaired the roof problems,” but the roofing system continued to experience problems. The Crum plaintiffs alleged that, despite their demands, nothing had been done to rectify the problems with the roofing system. They alleged that Johns Manville had agreed to extend its guarantee of the roofing system but that it ultimately had failed to do so. The Crum plaintiffs’ complaint against Johns Manville and Tip-Top included claims of negligence and wantonness, fraud, misrepresentation, breach of contract, breach of express warranty, breach of implied warranty, and breach of the implied warranty of fitness for a particular purpose.
 
 [1]
 

 On November 6, 2007, Tip-Top filed a motion to stay the case and to compel arbitration. It argued that all the Crum plaintiffs’ claims were subject to arbitration under a clause in Tip-Top’s subcontract with plaintiff R.M. Crum Construction Company, Inc. Tip-Top attached to its motion a copy of the guarantee that Johns Manville’s predecessor-in-interest had issued to R.M. Crum Construction Company, Inc., as well as a copy of its subcontract with that plaintiff.
 

 On November 19, 2007, Johns Manville filed a motion to join Tip-Top’s motion to stay or, in the alternative, to dismiss or to order a more definite statement. Johns Manville argued that the trial court should stay the action pending its determination of whether the Crum plaintiffs were required to arbitrate their claims against Tip-Top.
 

 On December 3, 2007, the Crum plaintiffs filed a response to the motion to compel arbitration in which they argued that the arbitration agreement contained in the subcontract was ineffective as drafted. On December 19, 2007, Tip-Top filed a motion to dismiss or, in the alternative, for a more definite statement, adopting as its grounds those grounds set forth in Johns Manville’s motion.
 

 On January 14, 2008, the trial court denied the motion to compel arbitration and ordered the Crum plaintiffs to file an amended complaint. On January 29, 2008,
 
 *212
 
 the Crum plaintiffs complied with the trial court’s order and filed an amended complaint that set forth additional allegations in support of their claims.
 

 On January 31, 2008, Johns Manville filed a motion to dismiss the Crum plaintiffs’ amended complaint. On February 14, 2008, Tip-Top filed a motion to dismiss the Crum plaintiffs’ amended complaint.
 

 On May 1, 2008, the trial court held a hearing on the motions to dismiss. On May 8, 2008, it entered a judgment granting in part and denying in part those motions. As to Johns Manville, the trial court dismissed all the Crum plaintiffs’ claims except for their claims asserting negligence and breach of express warranty. As to Tip-Top, the trial court dismissed all the Crum plaintiffs’ claims except for their claim alleging negligence. The trial court made its judgment final pursuant to Rule 54(b), Ala. R. Civ. P. The Crum plaintiffs timely appealed to this court. This court transferred the appeal to the supreme court for lack of appellate jurisdiction. The supreme court transferred the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.
 

 The standard by which we review a dismissal pursuant to Rule 12(b)(6), Ala. R. Civ. P., is well settled.
 

 “On appeal, a dismissal is not entitled to a presumption of correctness.... The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief.... In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail.”
 

 Nance v. Matthews,
 
 622 So.2d 297, 299 (Ala.1993). Our supreme court has held that “ ‘ “Motions to dismiss should be granted sparingly, and a dismissal is proper only when it appears beyond doubt that the plaintiff can prove
 
 no set of facts
 
 in support of the claim which would entitle the plaintiff to relief.” ’ ”
 
 DRC, Inc. v. Great American Ins. Cos.,
 
 901 So.2d 710, 713 (Ala.2004) (quoting
 
 Gilliland v. USGO Power Equip. Corp.,
 
 631 So.2d 938, 939 (Ala.1994), quoting in turn
 
 Hill v. Kraft, Inc.,
 
 496 So.2d 768, 769 (Ala.1986)). Furthermore, “[i]n considering whether a complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6), Ala. R. Civ. P., a court ‘must accept the allegations of the complaint as true.’ ”
 
 Crosslin v. Health Care Auth. of Huntsville,
 
 5 So.3d 1193, 1195 (Ala.2008) (quoting
 
 Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C.,
 
 828 So.2d 285, 288 (Ala.2002)).
 
 [2]
 

 
 *213
 
 The Crum plaintiffs contend that the trial court erred when it granted in part Johns Manville’s and Tip-Top’s motions to dismiss. They argue that the amended complaint satisfied the pleading requirements of Rules 8 and 9, Ala. R. Civ. P. Specifically, they contend that it is not beyond doubt that they could prove no set of facts as to each of their claims that would entitle them to relief.
 

 Rule 8, Ala. R. Civ. P., sets forth the general requirements for pleadings. In pertinent part, it provides:
 

 “(a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.
 

 [[Image here]]
 

 “(e) Pleading to Be Concise and Direct; Consistency.
 

 “(1) Each averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required.
 

 “(2) A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or on equitable grounds, or on both. All statements shall be made subject to the obligations set forth in Rule 11.
 

 “(f) Construction of Pleadings. All pleadings shall be so construed as to do substantial justice.”
 

 Our supreme court has written that “the primary purpose of pleading is to provide fair notice to adverse parties of any claim against them and the grounds upon which it rests. ... Generally, the pleadings, in and of themselves, are considered relatively unimportant because cases are to be decided on the merits.”
 
 Johnson v. City of Mobile,
 
 475 So.2d 517, 519 (Ala.1985). Discussing the issue whether a pleading complies with Rule 8, this court wrote in
 
 Mitchell v. Mitchell,
 
 506 So.2d 1009 (Ala.Civ.App.1987):
 

 “[Rule 8] is complied with if the claim for relief gives to the opponent fair notice of the pleader’s claim and the grounds upon which it rests.
 
 Carter v. Calhoun County Board of Education,
 
 345 So.2d 1351 (Ala.1977). The discovery process bears the burden of filling in the factual details. 5 C. Wright
 
 &
 
 A. Miller,
 
 Federal Practice and Procedure
 
 
 *214
 
 § 1215, p. 110 (1969). A fair reading and study of the Alabama Rules of Civil Procedure lead to the determination that pleading technicalities are now largely avoided and that the pleading of legal conclusions is not prohibited, as long as the requisite fair notice is provided thereby to the opponent.”
 

 Mitchell,
 
 506 So.2d at 1010.
 

 In the first count of the amended complaint, titled “negligence and/or wantonness,” the Crum plaintiffs made the following allegations:
 

 “11. Plaintiffs constructed a building located at 645 Wynn Drive, Huntsville, Alabama 35816, and [at] that time, purchased a roof system from Defendant, Johns Manville:
 

 “12. The roofing system purchased from Defendant, Johns Manville, was guaranteed for a period of ten (10) years.
 

 “13. Over a period of years, numerous problems with the roof have occurred. These include but are not limited to leaks. On each occasion, leaks or other problems were reported to Defendant, Johns Manville.
 

 “14. Defendant, Tip-Top Roofing and Sheet Metal, Inc., as the official Johns Manville representative and under the direction of Defendant, Johns Manville, allegedly repaired the roof problems upon each report of their existence but the roof continued to have leakage and other problems.
 

 “15. Despite numerous and repeated demands by the Plaintiffs, nothing has been done to rectify the problems with the roof to date.
 

 “16. Defendants, Johns Manville and Tip-Top Roofing, negligently/wantonly constructed, installed, repaired, fabricated and/or built the roofing system in question.
 

 “17. Despite numerous attempts at repairs, the faulty roofing system continues to leak and cause damage to the Defendants.
 

 “18. As a direct and proximate result of the Defendants’ Negligence and/or Wantonness, the Plaintiffs have been severely damaged.”
 
 [3]
 

 The Crum plaintiffs contend that the allegations of this count provided sufficient notice to Johns Manville and Tip-Top that they were claiming wantonness on the part of both defendants. Thus, they contend, the trial court erred when it dismissed the portion of this count alleging wantonness.
 

 Johns Manville responds that the Crum plaintiffs failed to allege any facts supporting a claim of wantonness. It argues that the allegations in the amended complaint demonstrate that Johns Man-ville did what was required of it by having Tip-Top “repair[ ] the roof problems upon each report of their existence.” Citing
 
 Robinson v. Allstate Insurance Co.,
 
 399 So.2d 288 (Ala.1981), it argues that the Crum plaintiffs’ wantonness claim was properly dismissed because they failed to allege facts showing that the injury of which they complained proximately resulted from Johns Manville’s alleged wantonness or that Tip-Top was Johns Manville’s agent and was acting in the line and scope of its authority at the time of the alleged commission of wanton acts. To those arguments, Tip-Top adds that the Crum plaintiffs failed to allege that Tip-Top owed them a duty, that it breached a duty, or that it acted with reckless disregard or reckless indifference at any point. TipTop also argues that the subcontract into
 
 *215
 
 which it entered with regard to the roofing system was with plaintiff R.M. Crum Construction Company, Inc., only, and not with the other three plaintiffs, and that, as a result, the wantonness claim was properly dismissed as to those three plaintiffs. Finally, Tip-Top argues that the wantonness claim was properly dismissed because a tort claim will not lie when the only injury alleged is to the product itself.
 

 Our review of the allegations leads us to conclude that the Crum plaintiffs adequately stated a claim of wantonness against Johns Manville and Tip-Top. To be sure, the allegations in the amended complaint are pleaded in a general fashion. However, as noted above, except for fraud claims, allegations in a complaint are not required to be specific to state a claim. We reiterate here that Rule 8 “is complied with if the claim for relief gives to the opponent fair notice of the pleader’s claim and the grounds upon which it rests. ... The discovery process bears the burden of filling in the factual details.”
 
 Mitchell,
 
 506 So.2d at 1010.
 

 Accepting the allegations of the amended complaint as true, we conclude that they were sufficient to notify Johns Man-ville and Tip-Top that the Crum plaintiffs were asserting a claim of wantonness against them, and what the grounds of that claim were. To hold otherwise would be to require more factual specificity than is required under our supreme court’s and this court’s interpretation of Rules 8 and 12(b)(6), Ala. R. Civ. P.
 
 See Simpson v. Jones,
 
 460 So.2d 1282, 1285 (Ala.1984) (“[T]he dismissal of a complaint is not proper if the pleading contains ‘even a generalized statement of facts which will support a claim for relief under [Ala. R. Civ. P.] 8’ ... because ‘[t]he purpose of the Alabama Rules of Civil Procedure is to effect justice upon the merits of the claim and to renounce the technicality of procedure.’ ”).
 

 Johns Manville and Tip-Top’s contention that the Crum plaintiffs failed to allege facts showing that Tip-Top was Johns Manville’s agent and was acting in the line and scope of its authority at the time of the alleged commission of wanton acts is without merit, and their reliance on
 
 Robinson v. Allstate Insurance Co.,
 
 399 So.2d 288 (Ala.1981), for that proposition is misplaced. In
 
 Robinson,
 
 a fire damaged the plaintiffs home. At his homeowner’s insurance carrier’s suggestion, the plaintiff hired a particular contractor to repair his home. Subsequently, the plaintiff sued the insurance carrier and the contractor alleging, among other claims, claims of negligence and wantonness for the manner in which the repairs were made and alleging that the contractor was an agent or employee of the insurance carrier. The trial court dismissed those claims. On appeal, the supreme court affirmed that dismissal, writing: “We opine that the pleader must, in pleading agency, allege some facts that show an agency relationship; that the agent was acting within the line and scope of his authority; and that the injury complained of was the proximate result of the agent’s negligence or wantonness.”
 
 Robinson,
 
 399 So.2d at 290.
 

 In the present case, the Crum plaintiffs have specifically alleged that Tip-Top was Johns Manville’s “official representative,” that Johns Manville directed Tip-Top’s attempted repairs of the roofing system, and that it was Johns Manville and Tip»-Top’s alleged wanton repair of the roof, among other things, that caused damage to the Crum plaintiffs. These allegations, taken as true, are sufficient to demonstrate an agency relationship between Johns Man-ville and Tip-Top and to demonstrate that the injury complained of was the result of Tip-Top’s actions. Again, although the al
 
 *216
 
 legations are not specific, our supreme court has made clear that specificity is not required in this context.
 

 Tip-Top’s separate argument that the fact that its subcontract was with plaintiff R.M. Crum Construction Company, Inc., only, justified the trial court’s dismissal of the wantonness claim as to the remaining plaintiffs is without merit. The subcontract was not attached to the complaint; instead, Tip-Top submitted the subcontract to the trial court as part of its motion to compel arbitration. Tip-Top points out that, when considering a motion to dismiss, a trial court may consider an undisputedly authentic document that, although not attached to the complaint, is referred to in the complaint and is central to the plaintiffs claims.
 
 See Wilson v. First Union Nat’l Bank of Georgia,
 
 716 So.2d 722, 726 (Ala.Civ.App.1998) (“ ‘[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiffs claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.’ ” (quoting
 
 GFF Corp. v. Associated Wholesale Grocers, Inc.,
 
 130 F.3d 1381, 1384-85 (10th Cir.1997))). Although this is so, our review of the amended complaint fails to disclose any reference to the subcontract. As a result, the subcontract was not properly before the trial court on the motion to dismiss and could not have formed a proper basis on which to dismiss the claims of any of the Crum plaintiffs.
 
 See Mooneyham v. State Bd. of Chiropractic Exam’rs,
 
 802 So.2d 200, 203 (Ala.2001) (holding that “‘[m]atters outside the pleadings should never be considered in deciding whether to grant a [Rule] 12(b)(6) motion [to dismiss]’ ” (quoting
 
 Hales v. First Nat’l Bank of Mobile,
 
 380 So.2d 797, 800 (Ala.1980))).
 
 [4]
 
 In addition, even if the trial court did consider the subcontract in resolving TipTop’s motion to dismiss, the fact that the subcontract lists only one of the Crum plaintiffs does not foreclose the possibility that Tip-Top’s actions injured all four of the Crum plaintiffs, thus conferring standing on all four of them to seek relief against Tip-Top. Thus, at this stage of the litigation, we cannot conclude that the Crum plaintiffs failed to state a claim against Tip-Top.
 

 Tip-Top’s final contention regarding the wantonness claim, that a tort claim arising out of an allegedly defective product will not lie when the only injury alleged is to the product itself, is also without merit. In making this argument, we assume that Tip-Top is referring to our supreme court’s adoption of the “economic-loss rule,” which “prevents tort recovery when a product damages itself, causing economic loss, but does not cause personal injury or damage to any property other than itself.”
 
 Vesta Fire Ins. Corp. v. Milam & Co. Constr.,
 
 901 So.2d 84, 106-07 (Ala.2004). However, the economic-loss rule does not prevent a tort action when the injury caused is personal or is to property other than the eomplained-of product.
 
 See Lloyd Wood Coal Co. v. Clark Equip. Co.,
 
 543 So.2d 671, 674 (Ala.1989). In the present case, the allegations of the amended complaint do not foreclose the possibility that the Crum plaintiffs could prove a set of facts in support of their claims that would allow them to recover damages for injuries to property other than the roofing system, especially when it is considered that one of the allegations of the amended complaint is that the roofing system
 
 *217
 
 leaked. We can easily envision evidence indicating that the alleged leaks caused damage to other parts of the Crum plaintiffs’ building or to the personal property contained therein. As such, the economic-loss rule does not support dismissal of the wantonness claim.
 

 In their second and third counts, labeled, respectively, fraud and misrepresentation, the Crum plaintiffs pleaded identical allegations. Among those allegations were the following:
 

 “25. Throughout the[ ] existing problems [with the roofing system], Plaintiffs attempted to extend the guarantee/warranty on the roof and indicated such in writing on numerous occasions to Defendant, Johns Manville.
 

 “26. In response, Johns Manville stated both orally and in written form, that the roofing guarantee/warranty would be extended. Said Defendant placed certain demands upon the Plaintiff, at various times, which it alleged were necessary in order for the roofing system guarantee/warranty to be extended, after the initial ten (10) year period. Plaintiffs complied with all of the Defendant[’]s demands.
 

 “27. Despite the Plaintiffs’ request and the Defendant, Johns Manville’s, agreement to do so, the guarantee has not been extended.
 

 “28. Plaintiffs detrimentally relied upon the Defendant, Johns Manville[’s], representation that it would a) provide a proper roofing guarantee/warranty, b) that it would repair the roof so that it would not leak, during the warranty period, and c) that it would extend the roofing guarantee/warranty, after the initial ten year period. Instead of seeking other assistance or acting in a different manner, Plaintiffs waited and relied upon the Defendant’s fraudulent representations that it would extend the roofing warranty. In addition to the above, Defendants fraudulently represented that the Defendant, Tip-Top Roofing [and Sheet Metal], Inc., was competent to repair the roof and knowledgeable as to such issues.
 

 “29. Defendant, Johns Manville, fraudulently refused to extend the warranty on the roofing system, despite its clear representation that it would do so.
 

 “30. Plaintiffs reasonably relied upon Johns Manville’s representations that it would extend the roofing guarantee/warranty.
 

 “31. As a direct and proximate result of the Defendants’ [fraudulent activity, the Plaintiffs have been severely damaged.”
 

 When a plaintiff pleads fraud, “the rule of generalized notice pleading is qualified by Rule 9(b), Ala. R. Civ. P.”
 
 Bethel v. Thorn,
 
 757 So.2d 1154, 1158 (Ala.1999). Rule 9(b) provides, in pertinent part, that “[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.” The Committee Comments on 1973 Adoption of Rule 9 describe the heightened pleading requirement in Rule 9(b) as follows:
 

 “[Rule 9(b) ] is a qualification of the generalized pleading permitted by Rule 8(a). But this special requirement as to fraud and mistake does not require every element in such actions to be stated with particularity. It simply commands the pleader to use more than generalized or conclusory statements to set out the fraud complained of. The pleading must show time, place and the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained .... But knowledge by the defendant of the falsity of the representation
 
 *218
 
 and reliance on the representation by the plaintiff can still be generally alleged .... [I]t should be expected that the courts will strive to find the details necessary for the sufficiency of such a complaint, if the pleading gives fair notice to the opposing party .... ”
 

 Summing up the requirements of Rule 9(b), our supreme court has written:
 

 “Thus, under Rule 9, for a pleading to state a claim of fraud, 1 “ ‘[t]he pleading must show [the] time, [the] place, and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained.’ ” ’
 
 [Phillips Colls. Of Alabama, Inc. v.] Lester,
 
 622 So.2d at [308,] 311 [ (Ala.1993) ] (quoting
 
 Miller v. Mobile County Board of Health,
 
 409 So.2d 420, 422 (Ala.1981) (quoting the Committee Comments to Rule 9(b))) (alterations in Lester); see also
 
 Robinson v. Allstate Ins. Co.,
 
 399 So.2d 288, 290 (Ala.1981) (‘The pleader must state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained.’). Where the alleged fraud is ‘predicated upon a promise, it is essential that the [pleader allege that the] promisor intended not to perform at the time of making the promise.’
 
 Robinson,
 
 399 So.2d at 290.”
 

 Bethel,
 
 757 So.2d at 1158.
 

 The Crum plaintiffs contend that the allegations contained in the second and third counts of the amended complaint met the heightened pleading requirement of Rule 9(b), Ala. R. Civ. P., because they detail the substance of Johns Manville’s allegedly false statements and address the Crum plaintiffs’ reliance on those statements. They point out that the Committee Comments to Rule 9 provide that the heightened pleading requirement of Rule 9(b) “does not require every element in such actions to be stated with particularity.”
 

 In
 
 Robinson v. Allstate Insurance Co.,
 
 supra, discussed above with regard to the Crum plaintiffs’ wantonness claim, one of the claims the plaintiff asserted was a claim asserting fraud and misrepresentation by the insurance carrier. The trial court dismissed that claim. Affirming the dismissal of that claim, our supreme court wrote:
 

 “Rule 9(b), [Ala. R. Civ. P.], provides that when fraud is alleged the circumstances constituting the fraud shall be stated with particularity. This does not require every element to be stated with particularity, but the pleader must use more than generalized or conclusionary statements setting out the fraud. The pleader must state the time, the place, the contents or substance of the false representations, the fact misrepresented, and an identification of what has been obtained. See Committee Comments to Rule 9(b), [Ala. R. Civ. P.].
 
 Rubens v. Ellis,
 
 202 F.2d 415 (5th Cir.1953).
 

 “In this complaint, Count One shows neither the time nor location of the alleged misrepresentation. Furthermore, although the complaint avers that Allstate made the misrepresentation, it fails to identify the individual who actually is alleged to have misrepresented the fact. The pleader attempts to predicate fraud on a promise which is not a representation of a material fact. In order for fraud to be predicated upon a promise, it is essential that the promisor intended not to perform at the time of making the promise. The complaint fails to allege any intent by Allstate not to perform.”
 

 Robinson,
 
 399 So.2d at 289-90.
 

 In the present case, the amended complaint alleged three misrepresentations by
 
 *219
 
 Johns Manville: (1) that the roofing guarantee would be extended; (2) that it would provide a proper roofing guarantee; and (3) that it would repair the roof so that it would not leak. It also alleged that both Johns Manville and Tip-Top misrepresented that Tip-Top was competent to repair the Crum plaintiffs’ roof. However, the amended complaint provides no allegation as to when any of these alleged misrepresentations were made, nor does it provide any allegation as to where they were made. Thus, as was the case in
 
 Robinson,
 
 the Crum plaintiffs’ fraud and misrepresentation claims do not meet the heightened pleading standard of Rule 9(b), Ala. R. Civ. P., and the trial court correctly dismissed those claims.
 

 In the fourth count of the amended complaint, the Crum plaintiffs alleged:
 

 “47. Plaintiffs entered into a written contract with the Defendant, Johns Manville, to install a properly functioning roofing system and an agreement that Johns Manville would have the roofing system repaired properly during the time that the roofing warranty was in effect.
 

 “48. Over a period of years, numerous problems with the roof have occurred. These include but are not limited to leaks. On each occasion, leaks or other problems were reported to Defendant, Johns Manville.
 

 “49. Defendant, Tip-Top Roofing and Sheet Metal, Inc., as the official Johns Manville representative and under the direction of Defendant, Johns Manville, allegedly repaired the roof problems upon each report of their existence but the roof continued to have leakage and other problems.
 

 “50. Despite numerous and repeated demands by the Plaintiffs, nothing has been done to rectify the problems with the roof to date.
 

 “51. Defendant, Johns Manville breached the written contract that it entered with the Plaintiffs both to install a properly functioning roofing system, and thereafter, breached the written contract that it entered with the Plaintiffs to properly and reasonably repair the roofing system, during the warranty period, when leaks were discovered.
 

 “52. As a direct and proximate result of the Defendants’ Breach of Contract, the Plaintiffs have been severely damaged.”
 

 The Crum plaintiffs contend that the allegations of this count stated a claim of breach of contract, both as to a written contract to install a properly functioning roofing system and as to an agreement to properly repair the roofing system should there be problems with it. These allegations, they argue, sufficiently put Johns Manville and Tip-Top on notice of their claim.
 

 In response, Johns Manville argues that the written contract to which the Crum plaintiffs referred in their amended complaint is the roofing-system guarantee, which, on its face, is merely a warranty on roofing materials that it supplied to the Crum plaintiffs and not a contract to install the roof on the Crum plaintiffs’ building. Tip-Top contends, among other things, that the amended complaint does not allege that it entered into a contract with the Crum plaintiffs. As a result, it argues, the trial court correctly dismissed the breach-of-contract claim as to it.
 

 With regard to Johns Manville, we conclude that the amended complaint stated a claim of breach of contract. The amended complaint alleged two separate undertakings by Johns Manville: (1) to install a roof for the Crum plaintiffs and (2) to repair the roof. We agree with Johns Manville that the roofing-system guaran
 
 *220
 
 tee was properly before the trial court when considering the motions to dismiss because the copy of the guarantee submitted was indisputably authentic, was referred to in the complaint, and was central to the Crum plaintiffs’ claims.
 
 See Wilson,
 
 716 So.2d at 726. However, the allegations of the amended complaint indicate that there was more to the relationship between the Crum plaintiffs and Johns Manville than the roofing-system guarantee; specifically, the amended complaint can be read to allege the existence of a separate agreement between the Crum plaintiffs and Johns Manville under which Johns Manville agreed to install the roofing system. We conclude that the allegations of the amended complaint sufficiently put Johns Manville on notice that the Crum plaintiffs were claiming the breach of such a contract and that those allegations were sufficient to state such a claim.
 

 Johns Manville argues that- any claim alleging the breach of a contract to install the roofing system would be barred by the statute of limitations because the roofing-system guarantee indicates that the installation of the roofing system was complete on February 1, 1997. Having reviewed the roofing-system guarantee, we determine that its notation “Date of Completion: 02/01/97” does not necessarily indicate that the roofing system was completely installed by that day. Instead, it could be that the roofing-system guarantee was issued before the completion of the installation of the roofing system and that the “completion date” listed thereon was merely aspirational. The allegations of the amended complaint, when taken together with the roofing-system guarantee, simply do not provide detail sufficient for a determination as to when the roofing-system installation was completed or as to when any breach of the contract to install the roofing system occurred; they likewise do not foreclose the possibility that the Crum plaintiffs could prove a set of facts entitling them to relief against Johns Man-ville as to this claim.
 

 We conclude, however, that the trial court properly dismissed the breaeh-of-contract claim as to Tip-Top. Our review of the count alleging that claim discloses no allegation that the Crum plaintiffs entered into a contract with Tip-Top or that Tip-Top breached any contract into which it may have entered. As a result, the amended complaint did not sufficiently put Tip-Top on notice that the Crum plaintiffs were alleging a breach-of-contract claim against it.
 

 In the fifth count of their amended complaint, titled “breach of express warranty,” the Crum plaintiffs set forth, in pertinent part, the following allegations:
 

 “57. Defendant, Tip-Top Roofing and Sheet Metal, Inc., as the official Johns Manville representative and under the direction of Defendant, Johns Manville, allegedly repaired the roof problems upon each report of their existence but the roof continued to have leakage and other problems.
 

 “58. Despite numerous and repeated demands by the Plaintiffs, nothing has been done to rectify the problems with the roof to date.
 

 “59. Defendant, Johns Manville breached the express warranty that it provided to the Plaintiffs, to properly and reasonably repair the roofing system, during the warranty period, when leaks were discovered.
 

 “60. As a direct and proximate result of the Defendants’ Breach of Warranty, the Plaintiffs have been severely damaged.”
 

 As previously indicated, as to this claim, the trial court denied Johns Manville’s motion to dismiss but granted Tip-Top’s
 
 *221
 
 motion to dismiss. The Crum plaintiffs contend that the trial court erred in dismissing this claim as to Tip-Top because the above-quoted allegations indicate that Tip-Top, as Johns Manville’s agent, “breached the express warranty that it represented to [the Crum plaintiffs] to properly and reasonably repair the roofing system, during the warranty period, when leaks were discovered.” Crum plaintiffs’ brief, p. 16. We disagree.
 

 Although count five clearly states a cause of action against Johns Manville, the count contains no allegation that Tip-Top entered into an express-warranty agreement with the Crum plaintiffs regarding the roofing system, or that it violated any such agreement. Instead, on its face, the amended complaint alleges that the express-warranty agreement was between the Crum plaintiffs and Johns Manville and that “Johns Manville breached the express warranty that it provided to” the Crum plaintiffs. As a result, the amended complaint does not state a claim against Tip-Top alleging breach of an express warranty, and the trial court’s judgment dismissing that claim as to Tip-Top is due to be affirmed.
 

 The sixth count of the amended complaint is titled “breach of implied warranty” and contains the following allegations:
 

 “59.[
 
 5
 
 ] Defendant, Tip-Top Roofing and Sheet Metal, Inc., as the official Johns Manville representative and under the direction of Defendant, Johns Manville, allegedly repaired the roof problems upon each report of their existence but the roof continued to have leakage and other problems.
 

 “60. Despite numerous and repeated demands by the Plaintiffs, nothing has been done to rectify the problems with the roof to date.
 

 “61. Defendant, Johns Manville breached the implied warranty that it provided to the Plaintiffs, to properly and reasonably repair the roofing system, during the warranty period, when leaks were discovered.
 

 “62. As a direct and proximate result of the Defendants’ Breach of Warranty, the Plaintiffs have been severely damaged.”
 

 The Crum plaintiffs contend that the foregoing allegations state a cause of action against Johns Manville and against TipTop, as Johns Manville’s agent, for breach of an implied warranty “to properly and reasonably repair the roofing system, during the warranty period.” However, Alabama law does not recognize such a cause of action.
 

 The law, both statutory and common, provides for several types of implied warranties. For example, Alabama’s version of the Uniform Commercial Code, § 7-1-1 et seq., Ala.Code 1975, provides for an implied warranty that goods sold under a contract shall be merchantable, § 7-2-814, and that they will be fit for the particular purpose for which they are to be used by the buyer, if the seller has reason to know of that purpose and the buyer relied on the seller’s skill or judgment in selecting the purchased goods, § 7-2-315. In addition, our courts have recognized an implied warranty of habitability and an implied warranty of workmanship with regard to the sale of a new home.
 

 However, our review of the statutory and common law has failed to uncover
 
 *222
 
 legal recognition of an “implied warranty to properly and reasonably repair” a faulty roofing system “during the warranty period.” Instead, it appears to this court that the Crum plaintiffs are merely restating their express-warranty claim as an implied-warranty claim. Because the law does not recognize any such implied warranty, we conclude that the trial court correctly dismissed that claim as to both of the defendants.
 
 [6]
 

 The seventh count of the amended complaint, titled “breach of warranty of fitness for a particular purpose,” contains the following allegations:
 

 “68.[
 
 7
 
 ] Defendant, Tip-Top Roofing and Sheet Metal, Inc., as the official Johns Manville representative and under the direction of Defendant, Johns Manville, allegedly repaired the roof problems upon each report of their existence but the roof continued to have leakage and other problems.
 

 “69. Despite numerous and repeated demands by the Plaintiffs, nothing has been done to rectify the problems with the roof to date.
 

 “70. Defendant, Johns Manville breached the implied warranty of fitness for a particular purpose, that it provided to the Plaintiffs, to properly and reasonably repair the roofing system, during the warranty period, when leaks were discovered.
 

 “71. As a direct and proximate result of the Defendants’ Breach of Warranty of Fitness for a Particular Purpose, the Plaintiffs have been severely damaged.”
 

 The Crum plaintiffs contend that the allegations contained in this count state a claim that Johns Manville and Tip-Top breached the warranty of fitness for a particular purpose. Particularly, they argue that their amended complaint indicates that “there was a written ‘Roofing System Guarantee’ that Johns Manville and Tip-Top, as Johns Manville’s agent, “breached the warranty that it represented to the Plaintiffs to properly and reasonably repair the roofing system, during the warranty period, when leaks were discovered”; and that the Crum plaintiffs were damaged by the breach of that warranty. Crum plaintiffs’ brief, p. 19. They argue that, “[u]nder the liberal pleading requirements of Rule 8, Ala. R. Civ. P., nothing more was required by [the Crum plaintiffs] to put the defendants on notice of the claim against them.”
 
 Id.
 

 The trial court correctly dismissed the Crum plaintiffs’ claim alleging breach of an “implied warranty of fitness for a particular purpose ... to properly and reasonably repair the roofing system, during the warranty period.” Our law recognizes an “implied warranty of fitness for a particular purpose.”
 
 See
 
 § 7-2-315, Ala.Code 1975. However, that warranty refers to whether an item purchased can be used for the purpose for which it was purchased, not to whether the seller has agreed to repair it if it is defective.
 
 See id.
 
 Our research has failed to uncover any legal basis for the “implied warranty” that the Crum plaintiffs assert in this count. Instead, as with their claim alleging breach of an implied warranty, it appears that the Crum plaintiffs are merely restating their express-warranty claim. Because the law does not recognize the implied warranty of
 
 *223
 
 fitness for a particular purpose to repair a purchased item, we conclude that the trial court’s dismissal of this count is due to be affirmed.
 
 [8]
 

 The Crum plaintiffs’ final count, entitled “fictitious parties,” asserts against certain fictitiously named parties all the allegations in their amended complaint. We read the trial court’s order as dismissing this count to the extent that it relates to Johns Manville and Tip-Top but permitting this count to continue to be operative as to any parties that may be substituted for any of the fictitiously named parties described in the amended complaint. As so construed, the trial court’s order is due to be affirmed in this regard.
 

 In their principal brief, the Crum plaintiffs assert as an issue whether the trial court erred when it dismissed their claims rather than allowing them to amend their complaint with a more definite statement of their claims. Similarly, in the summary of their argument, the Crum plaintiffs assert that the trial court erred when it dismissed their claims with prejudice when “the proper remedy ... would have been to allow [them] to amend the Complaint to the satisfaction of the Trial Court, or at worst, a dismissal without prejudice.” Crum plaintiffs’ brief, p. 9. The Crum plaintiffs do not mention those contentions in the argument section of their principal appellate brief, and they do not cite any legal authority in support of those contentions. As a result, we will not address them.
 
 See
 
 Rule 28(a)(10), Ala. R. Civ. P.;
 
 Steele v. Rosenfeld, LLC,
 
 936 So.2d 488, 493 (Ala.2005) (“ ‘The law of Alabama provides that where no legal authority is cited or argued, the effect is the same as if no argument had been made, (quoting
 
 Bennett v. Bennett,
 
 506 So.2d 1021, 1023 (Ala.Civ.App.1987)) (emphasis omitted));
 
 Myrick v. Myrick,
 
 714 So.2d 311, 315 (Ala.Civ.App.1998) (holding that appellate court would not consider issue set forth in statement of issues in appellate brief but not argued in brief).
 

 Based on the foregoing, we reverse the trial court’s dismissal of the Crum plaintiffs’ claim of wantonness as to both Johns Manville and Tip-Top and their claim of breach of contract as to Johns Manville; we affirm the balance of the trial court’s order.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . The final count of the complaint was titled “fictitious parties” and "adopted and re-averred” against the fictitiously named parties all the previous allegations and claims of the complaint.
 

 [2]
 

 . Johns Manville argues that the United States Supreme Court, in
 
 Bell Atlantic Corp. v. Twombly,
 
 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), abrogated the rule, set forth in
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and adopted by our supreme court in
 
 Bowling v. Pow,
 
 293 Ala. 178, 301 So.2d 55 (1974), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” In
 
 Twombly,
 
 the United States Supreme Court wrote that "Conley's 'no set of facts’ language has been questioned, criticized, and explained away long enough” and that “[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.” Twombly, 550 U.S. at 562, 127 S.Ct. at 1969.
 

 The United States Supreme Court's interpretation of the Federal Rules of Civil Procedure is not binding on this court's interpretation or application of the Alabama Rules of Civil Procedure. Instead, this court is bound by the Alabama Supreme Court’s interpretation of our Rules of Civil Procedure. See
 
 *213
 

 Thomas v. Williams,
 
 [Ms. 2070512, Nov. 21, 2008] - So.3d -, - n. 1 (Ala.Civ.App.2008) (refusing to apply "the more stringent standard for stating a claim in a complaint” set forth in
 
 Twombly
 
 on the basis that "[t]he Supreme Court of Alabama has the sole authority to promulgate rules governing practice and procedure in all Alabama courts” and on the basis that, because "this court is bound by the precedent of our supreme court, ... we are unable to overrule prior caselaw in order to alter a well-settled standard of review”). Our supreme court has adopted the standard set forth in
 
 Conley v. Gibson,
 
 supra, for the dismissal of claims under Rule 12(b)(6), Ala. R. Civ. P. Until such time as our supreme court decides to alter or abrogate this standard, we are bound to apply it, the United States Supreme Court’s decision in
 
 Twombly,
 
 supra, notwithstanding.
 

 [3]
 

 . As previously noted, the trial court dismissed this count as to both defendants to the extent that it asserted a claim of wantonness; to the extent that it asserted a claim of negligence, the trial court denied the defendants’ motions to dismiss.
 

 [4]
 

 . We note that the record does not indicate that the trial court considered the subcontract, given that, in dismissing the claims as to Tip-Top, the trial court made no distinction between each of the four Crum plaintiffs.
 

 [5]
 

 . Beginning with this count, the Crum plaintiffs incorrectly numbered the paragraphs of the amended complaint.
 

 [6]
 

 . Although it appears that the defendants did not make this argument to the trial court, "this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.”
 
 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C.,
 
 881 So.2d 1013, 1020 (Ala.2003).
 

 [7]
 

 .
 
 See
 
 note 5, supra.
 

 [8]
 

 . As with the previous claim, it appears that the defendants did not make this argument to the trial court. As we stated in note 6, supra, however, "this Court will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.”
 
 Liberty Nat’l Life Ins. Co. v. University of Ala. Health Servs. Found.., P.C.,
 
 881 So.2d 1013, 1020 (Ala.2003).